**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0939-18T2

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

JORDAN MARTIN,

      Defendant-Respondent.

_____

          Argued January 15, 2019 – Decided February 6, 2019

          Before Judges Fisher and Firko.

          On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-01-0087.

          Eric M. Snyder, Assistant Prosecutor, argued the cause for appellant (Andrew C. Carey, Middlesex County Prosecutor, attorney; Eric M. Snyder, of counsel and on the brief).

          Joseph M. Mazraani argued the cause for respondent (Mazraani & Liguori, LLP, attorneys; Jeffrey S. Farmer, on the brief).

PER CURIAM

This is an interlocutory appeal filed by the State of New Jersey. A Middlesex County grand jury indicted defendant on four counts of first-degree robbery under N.J.S.A. 2C:15-1, one count of second-degree unlawful possession of a weapon under N.J.S.A. 2C:39-5(b), one count of second-degree possession of a weapon for an unlawful purpose under N.J.S.A. 2C:39-4(a), and two counts of third-degree aggravated assault under N.J.S.A. 2C:12-1(b). Defendant was arraigned and pled not guilty as to all counts.

Defendant moved[1] to suppress out-of-court identifications made by the victims. There was a three-day testimonial hearing. The trial judge heard testimony from three of the four victims, a detective, and two investigators. Defendant waived his right to be present at the hearing, and only appeared on the final day of hearing, at the request of the trial judge.

The trial judge granted defendant's motion to suppress and concluded that the pretrial identification was unreliable because it was highly suggestive. The State filed a timely motion for reconsideration based primarily on defendant's absence from the courtroom during the testimony. The trial judge heard

---

[1] A Notice of Motion for a Rule 104 hearing was made by defense counsel on August 18, 2017.

A-0939-18T2

argument and denied the State's reconsideration motion.[2] We granted the State's motion for leave to appeal.

## I.

On September 30, 2015, Louis Locaccio was in his garage with his friends, Joseph Schreiber, Anders Lopez, and Ryan Bors. Locaccio arranged to sell marijuana to E.S., a fourteen-year-old female. She arrived around 8:00 p.m. and entered the garage with an adult male unknown to Locaccio. The man approached Locaccio and demanded the marijuana. Locaccio refused, and the assailant pulled out a large, silver revolver. After Locaccio relented and turned over the marijuana, the assailant robbed Locaccio, Lopez, and Bors. During the robbery, the assailant pistol-whipped Lopez and Bors, stole Locaccio's wallet, and several cell phones. After the assailant and E.S. fled, Schreiber took Lopez to the hospital for treatment of his injuries while Locaccio and Bors went to the police station to report the incident.

All four men were intoxicated from smoking marijuana during the robbery. They concurred that the assailant was roughly six feet tall, and was

---

[2] Defendant has moved before the trial judge to bar any in-court identifications at trial based upon the suppression decision and the judge's indication to grant that application.

A-0939-18T2

either a light-skinned African-American or a Latino male;[3] that the garage was well-lit; and that they were able to observe him for a substantial period of time.

Nonetheless, descriptions of the assailant varied at the hearing. Schreiber testified that he saw the left and front side of the assailant's face, because he wore a hood that covered his head. Schreiber was "unable to recall the assailant's stature, eyes, shape of his nose, scars, or facial hair." Although he could not tell what it depicted, Schreiber recalled seeing a "blob" tattoo on assailant's right calf.

Locaccio noticed tattoos on the assailant's hands and arms, particularly a "large number seven" on his right hand thumb. He did not observe any other tattoos on the assailant. Unlike Schreiber, Locaccio testified that the assailant was not wearing a hood or trying to hide his face, and described his "short, dark brown or black hair and a little bit of facial hair."

Lopez testified that the assailant had tattoos on his arms and legs, but contradicted himself later by saying that he saw a tattoo on the assailant's leg, but none on his arms or wrists. Lopez could not describe the leg tattoo, other than it looked like a circular "blob." Additionally, he testified the assailant wore "a hooded sweatshirt with the hood up and khaki shorts." Lopez contradicted

---

[3] Bors did not testify.

himself again, first stating he got a good look at the assailant's face, and later testifying that he did not see his face well.

Schreiber enlisted his friend, Jevon Armstrong, to cull through E.S.'s[4] social media accounts and see if he could find photographs of anyone matching the assailant's description. Two days after the robbery, Armstrong showed Schreiber approximately ten photographs obtained from E.S.'s Instagram account that he believed matched the description. After reviewing the photographs, Schreiber identified one he thought depicted defendant. Armstrong emailed the photograph to Schreiber.

Thereafter, Schreiber created a photo array on his cell phone and showed it to Lopez, who identified defendant in the same photograph as Schreiber did. He then showed his photo array to Locaccio, who also selected defendant's photograph. Schreiber testified that Armstrong did not try to persuade him to select the purported photograph of defendant and that he did not try to influence Lopez or Locaccio. Further, Schreiber contended that he did not discuss the photographs with Lopez or Locaccio before they chose the photograph

---

[4] E.S. was charged as a juvenile and pled guilty to her participation in this matter.

ostensibly depicting defendant. Schreiber did not preserve the other photographs that Armstrong showed to him.

Schreiber provided a copy of the photograph purportedly depicting defendant to Detective Kenneth Parada of the South Plainfield Police Department. Further investigation by the police led to the conclusion that the individual in the photograph was defendant. On October 6, 2015, Parada visited defendant at the Middlesex County Corrections Center, where he was being held on fourth-degree weapons charges. Parada testified that defendant was tall and had shoulder length, bushy hair.

During the March 14 hearing, the trial judge requested defendant appear in court so that the judge could physically see him and make findings vis-à-vis the witness's testimony. The judge noted that defendant was approximately six-foot six-inches tall, had no tattoos on his legs, no number seven tattoo on his right hand, and had a number of tattoos on his neck. The prosecutor pointed out that a tattoo on defendant's left hand could have been mistaken for the number seven by the victims. After considering the testimony of the victims, the defense witnesses, Prada, and two investigators, and after analyzing the relevant case law and his physical observation of defendant, the trial judge determined that the process was highly suggestive and that there was a likelihood of

A-0939-18T2

misidentification, thereby requiring suppression of the out-of-court identifications.

## II.

The State argues the following points on appeal:

POINT I

THE STATE WILL SUFFER IRREPARABLE INJURY FROM THE TRIAL COURT'S SUPPRESSION OF THE VICTIMS' OUT-OF-COURT IDENTIFICATIONS OF DEFENDANT.

POINT II

THE COURT ERRED BY INCORRECTLY FINDING THAT A TESTIMONIAL HEARING WAS WARRANTED AND THEN COMPOUNDED THIS ERROR BY INCORRECTLY EVALUATING THE SYSTEM AND ESTIMATOR VARIABLES SURROUNDING THE IDENTIFICATIONS.

In reviewing a motion to suppress, we must not disturb the trial court's factual findings provided that they are based on sufficient, credible evidence. State v. Robinson, 200 N.J. 1, 15 (2009). When the trial court has the "opportunity to hear and see the witnesses and to have the 'feel' of the case," deference to its factual findings are particularly appropriate. State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The reviewing court should only disturb findings so clearly mistaken that justice

demands intervention and correction.  Ibid.  Findings of law are reviewed de novo.  State v. Smith, 212 N.J. 365, 387 (2012).  If the trial judge committed error, it must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached."  State v. Macon, 57 N.J. 325, 336 (1971).

The State argues that defendant failed to produce any evidence of highly suggestive conduct in the identification process, and there was no police involvement to warrant a pretrial hearing.  There is no forensic evidence linking defendant to these crimes as a firearm found in his possession several days after the robbery was suppressed, and the victims' property was never recovered.  Thus, the trial judge's decision to suppress the witnesses' identifications may be fatal to its case.  The trial judge did not address E.S.'s confession naming defendant as the assailant.  Further, the State contends that the trial judge improperly applied the Henderson[5]/Chen[6] analysis. Defendant contends that the identification procedure was highly suggestive under Chen, and that the trial judge properly excluded the identifications under Rule 403.  We disagree.

---

[5]  State v. Henderson, 208 N.J. 208 (2011).

[6]  State v. Chen, 208 N.J. 307 (2011).

A-0939-18T2

In State v. Chen, our Supreme Court outlined the approach that judges must use to determine the admissibility of identification evidence when there is suggestive behavior but no police action:

> (1) to obtain a pretrial hearing, a defendant must present evidence that the identification was made under highly suggestive circumstances that could lead to a mistaken identification, (2) the State must then offer proof to show that the proffered eyewitness identification is reliable, accounting for system and estimator variables, and (3) defendant has the burden of showing a very substantial likelihood of irreparable misidentification.
>
> [Chen, 208 N.J. at 327.]

The initial threshold of suggestiveness must be "highly suggestive circumstances as opposed to simply suggestive conduct." Ibid. The Court reasoned that "if [a defendant] cannot show highly suggestive private action, [then] it is unlikely [the defendant] will prevail at the hearing." Ibid. Raising this threshold avoids unnecessary pretrial hearings. Ibid.

The Henderson Court ruled that determining the admissibly of out-of-court identification required a two-step analysis. Henderson, 208 N.J. at 218-19. The first step requires exploration of "system and estimator variables" at a pretrial hearing if defendant "can show some evidence of suggestiveness." Ibid. If the trial court finds merit in defendant's "allegation of suggestiveness," it

should weigh the system and estimator variables to determine admissibility. Ibid.

System variables are elements of the identification process that the criminal justice system controls. Id. at 261. Trial judges should not expect the public's identification procedure to conform to police standards. Chen, 208 N.J. at 326. Therefore, the showing of suggestiveness must be even more persuasive when private actors are involved and not law enforcement. Id. at 316. However, trial judges must still apply system evaluators during a Rule 104 hearing. See id. at 329. Estimator variables are factors that are "related to the incident, the witness, or the perpetrator." Henderson, 208 N.J. at 261. The criminal justice system does not control these factors. Ibid.

The Henderson Court enumerated system and estimator values for the trial judge to consider. Henderson, 208 U.S. at 289-92. The nine system evaluators include: (1) whether the procedure was performed blind or double-blind, (2) whether there were neutral pre-identification instructions, (3) whether the array contained only one suspect among innocent parties and if the suspect stood out, (4) whether the witness received information or feedback "about the suspect or the crime, before, during, or after the identification procedure," (5) whether the administrator recorded the witness's confidence immediately after the

10

identification, (6) whether "the witness view[ed] the suspect more than once as part of multiple identification procedures," (7) whether the administrator "perform[ed] a show [] up more than two hours after an event," (8) whether "the eyewitness . . . had spoken with anyone about the identification" and what they discussed, and (9) whether the witness "initially [made] no choice or [chose] a different suspect or filler." Id. at 289-290.

The estimator values are: (1) whether the event involved a high level of stress, (2) whether the weapon was visible and used during a crime lasting a short time, (3) how much time the witness observed the event, (4) the distance between the witness and perpetrator and the lighting, (5) the witness's age and whether the witness was under the influence of drugs or alcohol, (6) whether the perpetrator was wearing a disguise or changed some facial feature, (7) the amount of time between the identification and the crime, (8) whether there was a "cross-racial identification," (9) "opportunity to view the criminal at the time of the crime," (10) "degree of attention," (11) "accuracy of prior description of the criminal," (12) "level of certainty demonstrated at the confrontation," and (13) "the time between the crime and the confrontation." Id. at 291-92.

Thus, to assess whether an identification is admissible when police action is not implicated, the court must take the following approach:

A-0939-18T2

(1) to obtain a pretrial hearing, a defendant must present evidence that the identification was made under highly suggestive circumstances that could lead to a mistaken identification, (2) the State must then offer proof to show that the proffered eyewitness identification is reliable, accounting for system and estimator variables, and (3) defendant has the burden of showing a very substantial likelihood of irreparable misidentification.

[Henderson, 208 N.J. at 327.]

The facts in Chen fundamentally differ from this case. In Chen, a female attacker assailed a woman in her home. Chen, 208 N.J. at 312. The victim fought off the attacker, who fled. Ibid. After reporting the incident to the police, the victim drew a picture of the attacker and showed it to her husband. Id. at 312-13. He recognized the attacker and said that it might be the defendant, his ex-girlfriend, who called him three days earlier. Id. at 311, 313. The husband opened defendant's personal website page and showed his wife "five to ten pictures of defendant." Ibid. Notably, defendant was the only person depicted in the pictures. Id. at 329. The wife reviewed the pictures at least five times more before trial. Ibid. The Court found that this procedure was not neutral and "strongly suggested" that defendant was the attacker, and remanded the case for a Rule 104 hearing. Ibid.

The Chen Court also provided an example that would trigger a Rule 104 hearing: a police officer asking, "'Are you sure the attacker wasn't wearing

glasses?'" during a photo array would require a hearing, but those same words uttered by the witness's friend would not if they had "no apparent knowledge or authority." Id. at 328. Conversely, "if an eyewitness provided a detailed identification to a fellow eyewitness, those highly suggestive comments would require exploration at a hearing." Ibid. In contrast, here a photo array was prepared, similar to a police photo array. Only one photograph in the array depicted defendant, and not all of them, as in the Chen case.

Trial courts must also consider the system variables enumerated in Henderson to define suggestiveness. Henderson, 208 N.J. at 289. The Court noted that neither the system nor estimator variables are an exhaustive list of factors for consideration. Id. at 289, 291. The variables enable the court to assess the reliability of the identification and admissibility. Id. at 291.

Applying these standards, there was no need for a Rule 104 hearing in this matter. This was an abuse of discretion by the trial judge resulting in plain error because defendant did not meet the highly suggestive circumstances threshold required under Chen and Henderson. The photograph presentation here was objective, impartial, and not highly suggestive. In applying our de novo standard of review, we conclude that the identification procedure utilized here was not highly suggestive, and a Rule 104 hearing was unwarranted. The trial

13

judge usurped the role of the jury because the discrepancies in the witnesses' testimony go to the issues of credibility and weight of the identification and not admissibility. For example, Schreiber testified that he recognized defendant within "a couple seconds" of viewing his photograph and he was "100 percent certain" of his identification. Schreiber also testified that he showed several photographs to Lopez, who made an independent selection. Lopez testified that he was simply asked by Schreiber to "look at some photos, see if [he] recognized anybody." He was eighty to ninety percent certain of his identification at the hearing, highlighting the fact that he recognized defendant's tattoos, and that "his face seemed familiar." When first reviewing the subject photograph, Lopez testified that he "was confident it was him." Locaccio testified he immediately recognized defendant in the subject photograph and he was "positive" it was the assailant.

The trial judge acknowledged that he was conducting a Rule 104 hearing simply because the "circumstances as to how this identification was made is, at best, unclear. . . ." That is not what the Henderson/Chen analysis contemplates. As mandated by Chen, a defendant challenging an out-of-court identification is not entitled to a Rule 104 hearing unless "evidence that the identification was made under highly suggestive circumstances that could lead to a mistaken

A-0939-18T2

identity" has been shown. Based upon our careful review of the record, no highly suggestive circumstances exist in this case.

The trial judge did not enumerate the system variables he relied upon, and concluded that the circumstances surrounding Schreiber showing the subject photo to the victims was largely "undeveloped," and the descriptions of defendant in the booking report were inconsistent with his appearance. Schreiber's methodology was not "double-blind" according to the trial judge because Schreiber included defendant's photograph in the array, and he mentioned that a photo of the gunman was in there. This process lacked "neutral pre-identification instructions warning that the suspect may not be in the lineup" or that Locaccio and Lopez should not feel compelled to identify one of the photos according to the trial judge.

We find error in the trial judge concluding that "by the time these three victims signed their names next to the suspect's photo on October 6, 2015, they had been discussing the photograph for four days amongst each other." The record fails to support that conclusion. Emphasis was unduly placed by the trial judge on whether the other individuals in the photo array resembled defendant, the descriptions of his hair and tattoos. The trial judge stated that the victims "noticed tattoos that do not exist yet they don't notice a tattoo that would have

15

been clearly visible." The incident took less than five minutes and the victims were obviously under duress. These estimators or variables were improvidently decided by the trial judge because <u>Henderson</u> did not intend for the court to engage in such a fact-finding exercise. These determinations are for a jury to decide. <u>Chen</u>, 208 N.J. at 327. The identification evidence must be presented to the jury which will be tasked with deciding the reliability of the evidence and the credibility of the eyewitness's testimony. This comports with the ruling in <u>Chen</u>.

We need not discuss the State's remaining arguments because we are reversing on the grounds that were discussed. The July 2, 2018 order granting defendant's motion to suppress the identifications made by Schreiber, Locaccio, and Lopez is vacated and reversed. Whether any witness is able to reliably or persuasively identify defendant as the culprit shall be determined by a jury. The matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0939-18T2